UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONNELL E. GILDER, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Cause No. 1:18-cv-2096-JMS-DLP |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM IN OPPOSITION
## TO GILDER'S 28 U.S.C. § 2255 MOTION

The United States, by counsel, Josh J. Minkler, and Jeffrey D. Preston, hereby responds to Donnell Gilder's motion for post-conviction relief under 28 U.S.C. § 2255. Gilder primarily claims that his attorney was ineffective prior to Gilder's plea agreement. In addition, Gilder brings freestanding claims for unconstitutional vagueness, a Sixth Amendment violation, and a sentence reduction under the First Step Act. For the reasons detailed below, this Court should deny Gilder's challenge.

### RELEVANT PROCEDURAL HISTORY

On April 16, 2016, Gilder robbed a Speedway Gas Station in Indianapolis, Indiana. (Crim. Dkt. 51 at 10.) He admitted to law enforcement officers that he fired his handgun while inside. (*Id*.) He stole $136. (*Id*.) These facts established the basis for Counts 9 and 20. (*Id*.)

Eleven days later, Gilder robbed another Speedway in Indianapolis. (*Id.* at 11.) A clerk from the store was smoking outside when she noticed Gilder sneaking up on her. (*Id.*) She ran for the store and attempted to lock the doors. (*Id.*) Gilder chased the clerk, but fell outside the business's doors. (*Id.* at 12.) He stood up and shot a round from his handgun through the door. (*Id.*) The clerk ran to the freezer area of the store to hide. (*Id.*) Gilder picked up the spent shell casing and entered the Speedway. (*Id.* at 13.) Surveillance footage captured this robbery. (*Id.*)

After a pursuit, Gilder was apprehended with one 9-millimeter handgun magazine. (*Id.* at 14.) A semi-automatic handgun was later located near the location that Gilder was apprehended. (*Id.* at 15.) These facts established the basis for Counts 11 and 22. (*Id.* at 11-15.)

Gilder, while brandishing a firearm, participated in nine additional robberies between February 29, 2016 and April 27, 2016. (*Id.* at 16.)

Gilder was charged in a twenty-two count indictment with interference with commerce by robbery, in violation of 18 U.S.C. 1951(a) (Counts 1 through 11); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 12-19 and 21); and discharge of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Counts 20 and 22). (Crim. Dkt. 15.)

On March 13, 2017, a petition to enter a plea of guilty and plea

2

agreement was filed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), where Gilder pled guilty to Counts 9, 11, 20, and 22. (Crim. Dkt. 43.) The United States agreed to dismiss the remaining counts. (*Id*. at 2.) The United States also agreed to request a sentence at the low end of the guideline range, while Gilder could request a lower sentence. (*Id* at 9.) The parties stipulated and agreed to the factual basis. (*Id*. at 18.)

Gilder's total offense level was 24, his criminal history category of I, and his guideline range was 51 to 63 months for Counts 9 and 11. (*Id*. at 2.) As to the Counts 20 and 22, consecutive minimum sentences of 10 and 25 years were statutorily required. (*Id*.)

Gilder waived his right to appeal his conviction and sentence imposed on any ground, or seek collateral review under § 2255. (*Id*. at 23-24.) The § 2255 waiver did not encompass claims of ineffective assistance of counsel. (*Id*. at 24.)

On July 10, 2017, the Court accepted Gilder's plea agreement and sentenced Gilder to 420 months and one day of imprisonment, to be followed by three years of supervised release. (Crim. Dkt. 55.) The government moved to dismiss the remaining counts and the Court granted the motion.

On July 10, 2018, Gilder filed a § 2255 motion alleging his attorney was ineffective for: (1) failing to investigate the facts surrounding his initial

3

interview with police officers; and (2) failing to fully explain the plea and sentencing process. (Dkt. 1.)

On July 13, 2018, the Court directed the United States to respond. (Dkt. 2.) On January 7, 2019, Gilder filed an amended motion for post-conviction relief pursuant to § 2255, dropping his first ineffective assistance of counsel claim and reiterating the second. (Dkt. 14.) Additionally, Gilder added three new claims: (1) the statute he was sentenced under was unconstitutionally vague; (2) the 2018 First Step Act reduces his sentence; and (3) his Sixth Amendment right to a jury trial was violated. (*Id.*)

## DISCUSSION

### I.    28 U.S.C. § 2255 Standard

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has

4

occurred which results in a complete miscarriage of justice." *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (internal quotation omitted).

## II.    Ineffective Assistance of Counsel Standard

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) trial counsel's performance fell below objective standards for reasonably effective representation and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If Gilder cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the deficiency prong of the *Strickland* test, Gilder must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider in light of all of the circumstances whether counsel's performance was outside the wide range of professionally competent assistance. *Id*.

In order to satisfy the prejudice component, Gilder must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In addition, in attacking trial counsel's performance, a defendant "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Frentz v.*

5

*Brown*, 876 F.3d 285, 293 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689). In the context of a plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

Gilder's claim must be viewed in context of his guilty plea. "Surmounting *Strickland*'s high bar is never an easy task." *Lee v. United States*, 582 U.S. __, 137 S. Ct. 1958, 1967 (2017) (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "[A]nd the strong societal interest in finality has 'special force with respect to convictions based on a guilty plea.'" *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Thus, "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.*

With that high standard in mind, the government will address Gilder's particularly claims, in turn, below. Gilder asserts two claims ostensibly framed as ineffective assistance of counsel: (1) that his counsel failed to inform him of the nature of his offense and plea deal, and (2) that his counsel failed to investigate constitutional violations[1]. To the extent these are

---

[1]While Gilder asserts both claims in his original motion, in his amended motion he asserts only the first. The government has chosen to respond to both.

6

freestanding claims, they are not permitted on collateral review. *Cf. Stone v. Powell*, 428 U.S. 465, 481 (1976). The government, in the interest of interpreting *pro se* litigation liberally, will also address these claims as ineffective assistance of counsel (albeit without forfeiting any claim that Gilder's non-ineffective assistance of counsel claims are procedurally defaulted).

### III.   Failure to Inform

Gilder first claims his plea was not made knowingly and voluntarily—although he frames this as an ineffective assistance of counsel argument. Gilder specifically claims his counsel was ineffective because counsel did not explain the nature of the charges against him and, therefore, his guilty plea was not made knowingly and voluntarily. (Dkt. 1 at 10.) While an attorney can fall below the objectively reasonable standards for failure to keep her client informed of important case developments, there is no evidence of such a failure in Gilder's case. *See Strickland* 466 U.S. at 688.

### A. Gilder's bare assertions of lack of understanding are insufficient to meet the Section 2255 burden

First, Gilder has not alleged sufficient facts to overcome the presumption of reasonable performance. Gilder alleges only that counsel

should have "handled him with kid gloves" and that he did not "understand the process to which he was being sentenced." (Dkt. 1 at 19.)

But this type of broad, unsupported assertion of ineffective assistance of counsel is insufficient. *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013). Section 2255 petitions "must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (internal quotations omitted). Gilder did not present "an affidavit from himself or his trial counsel supporting his version of his attorney's conduct, nor any other available, probative evidence" to support his claim. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). Therefore, this Court should summarily deny Gilder's claim.

Moreover, Gilder's failure to flesh out his unsubstantiated claim makes it difficult to respond to, but the Government attempts to do so below.

## B. Gilder's Rule 11 colloquy presumes understanding and rebuts his claim of deficient performance

Gilder's responses during his Rule 11 colloquy disabuse any notion that he did not understand his plea—or that he should have been treated with "kid gloves."

Rule 11(d) of the Federal Rules of Criminal Procedure requires a district court to ask the defendant specific questions before the court accepts

a plea deal, to ensure the defendant's rights are being upheld and to provide an adequate record for appeal and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). This creates a presumption that the plea was made voluntarily and knowingly. *Id.*

A defendant's sworn statements in a Rule 11 colloquy are presumed to be true. *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). A defendant who claims his plea was not made knowingly and voluntarily, contrary to his assertions at the Rule 11 colloquy, faces a heavy burden of persuasion. *United States v. Standiford*, 148 F.3d 864, 868-69 (7th Cir. 1998).

During Gilder's plea and sentencing hearing, the transcript reveals the court scrupulously analyzed the plea deal and its consequences with Gilder. (Sent. Tr. 7, 9, 10, and 21.) Gilder affirmed his understanding of the four counts he pleaded guilty to, the elements the government would have needed to prove at trial for each offense, and the guideline range for each offense, as well as the many other rights Gilder was waiving and potential consequences of his waiver. (Sent. Tr. 7, 9, 10, and 21). At no point did Gilder display confusion or a lack of understanding regarding the plea process.

Thus, nothing from the Rule 11 colloquy gives any hint that Gilder failed to understand his plea—much less portray any deficiency necessitating a "kid glove" approach from his attorney. (Nor, in fact, does the record even

indicate that Gilder's attorney failed to treat Gilder with "kid gloves"—
Gilder's attorney very well might have.)

Therefore, Gilder's claim of ineffective assistance of counsel based on
failure to explain the legal process is rebutted by Gilder's own firm assertions
of understanding at the Rule 11 colloquy.

### C. Gilder's beneficial plea deal and the Rule 11 colloquy rebut any claim of prejudice

Nor has Gilder shown prejudice for failure to inform. In the context of a
plea, the "defendant must show that there is a reasonable probability that,
but for counsel's errors, he would not have pleaded guilty and would have
insisted on going to trial." *Hill*, 474 U.S. at 58. Gilder cannot merely allege
that he would have pleaded differently and gone to trial. *See Key*, 806 F.2d at
139. Instead, he must make a substantial claim using objective evidence, not
merely give self-serving testimony. *McCleese v. United States*, 75 F.3d 1174,
1179 (7th Cir. 1996). Gilder has failed to present any evidence other than his
own vague assertions. The record in no way reveals a reasonable probability
that Gilder would have chosen to go to trial had he better understood the plea
deal.

In fact, the record suggests the exact opposite. As detailed more below,
*see* Part IV.A, the plea bargain allowed Gilder to plead to only four out of
twenty-two counts—despite the overwhelming strength of the prosecution's

10

evidence (*e.g.*, Gilder's confession, a surveillance tape of him committing the crime, and eyewitness testimony). (Crim. Dkt. 44 and 47 at 5.) Gilder greatly benefited from his counsel's negotiated plea deal. In the face of an extremely beneficial plea deal and the government's strong evidence, Gilder has plainly failed to show with reasonable probability that he would have gone to trial if further informed (in some unidentified nebulous manner) about his case.

Finally, the Rule 11 colloquy also rebuts prejudice. Even if Gilder's counsel failed properly explain the nature of the plea deal to him, it is clear from the record that the judge thoroughly explained each charge and its consequence. (Sent. Tr. 7, 9, 10, and 21). A proper Rule 11 colloquy normally remedies any failure to inform on the part of the trial counsel. *United States v. Padilla*, 23 F.3d 1220, 1221 (7th Cir. 1994). Thus, Gilder was not prejudiced by this alleged lack of communication.

The record reflects the defendant knowingly and voluntarily pleaded guilty and he presented no new specific allegations in his §2255 motion. Therefore, Gilder proved neither deficiency nor prejudice and his motion based on ineffective assistance of counsel should be denied.

## IV.   Failure to Investigate

Gilder next claims his counsel failed to investigate the facts surrounding his interview with law enforcement and that, had she done so, she would have discovered his Fifth and Sixth Amendment rights were

11

violated. (Dkt. 1 at 11). However, not only did counsel perform more than adequately in the plea negotiations, but counsel was not ineffective here because Gilder's constitutional claims are meritless.

### A. Counsel's commendable performance during plea negotiations undermine Gilder's deficiency and prejudice arguments.

Firstly, Gilder's claim should be considered in light of the unique and nuanced nature of plea bargaining. "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124 (2011). This uncertainty inherent in plea bargaining increases the already-substantial burden on Gilder to show ineffective assistance. *Id.* at 132.

Deficiency is measured differently depending on the stage of the case. *Id.* at 126. There is a benefit to acknowledging guilt and accepting responsibility early in the process, as it allows the defendant to "plead[ ] to a lesser charge and obtain[ ] a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve." *Id.* at 124. Therefore, choosing to quickly accept a plea bargain rather than fight an uphill battle in court may in fact be commendable performance (and thus far from deficient).

12

That is underscored by the lack of prejudice here. Gilder claims counsel was ineffective in part because she did not investigate his claims that his confession should have been suppressed due to constitutional violations. (Dkt. 1 at 13.) However, had Gilder's counsel attempted to move to suppress Gilder's confession to police, he risked a "stiffened resolve" on the part of the prosecution. *Premo*, 562 U.S. at 124. Such a motion could have eliminated any good will in plea negotiation process, or given the prosecution more time to beef up its own case.  Either could have hurt Gilder in the long run. More importantly, such a claim would have been for naught. As is explained in more detail below, any claim that Gilder's constitutional rights were violated during the police interrogation is fruitless. Any suppression motion would have gained Gilder nothing, while risking a lot.

In fact, counsel would have been deficient if she undermined the plea deal. Gilder originally faced a twenty-two count indictment. Furthermore, the Government's case against Gilder included incredibly strong evidence. In addition to Gilder's own recorded confession to police during an interrogation, the Government had eyewitness testimony from robbery victims, officer testimony detailing Gilder's flight from police before arrest, and surveillance video of one of Gilder's robberies, which included footage of him discharging a firearm at the gas station clerk. (Crim. Dkt. 47 at 5.) Ultimately, the Government had sufficient evidence that Gilder committed eleven violent

robberies in a time period of two months, and likely would have succeeded at trial on all twenty-two counts. But, under the plea deal counsel negotiated, the government agreed to drop eighteen counts and recommend a sentence at the low end of the guideline range. (Crim. Dkt. 43.) Ultimately, Gilder received the minimum sentence, thirty-five years—based, in part, on his cooperation. (Crim. Dkt. 55.)

Counsel had no reason to risk such a beneficial deal. At the time of plea negotiations, no competent attorney would have advised engaging in futile challenges when their client faced a significantly worse downside. *See, e.g., Premo*, 562 U.S. at 124.

Therefore, when addressing the merits of Gilder's *Strickland* claims below, counsel's strategic decisions made during the plea bargaining—which resulted in a highly beneficial deal for the defendant—color the argument even more in favor of dismissal.

### B. Counsel's failure to investigate a fruitless defense does not constitute deficiency

Effective representation includes pretrial investigation, although a decision not to investigate must be viewed within the totality of the circumstances. *Santiago v. Hinsley*, 93 F. App'x 74, 78 (7th Cir. 2004). The Sixth Amendment does not require an attorney to investigate defenses not reasonably suggested by the facts of the case or by defendant's conduct.

14

*United States ex rel. Rivera v. Franzen*, 794 F.2d 314, 31 (7th Cir. 1986). "In a failure to investigate case, a defendant must prove evidence uncovered during the investigation would have led the attorney to change h[er] recommendation to accept the plea offer." *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013).

As an initial matter, to the extent that Gilder's claims are freestanding constitutional claims, they are procedurally defaulted. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *cf. Stone v. Powell*, 428 U.S. 465, 494–95 (1976).  To the extent that his claims are under the guise of ineffective assistance of counsel, they are not procedurally defaulted and the government will address them below.

In all events, Gilder's claims here are meritless. He claims that his attorney should have moved to suppress evidence from his police interview. But the arguments he believes his attorney should have made are not supported by the record. Gilder first claims he "was not advised that he was waiving his right to have counsel present during the questioning stage of the investigation." (Dkt. 1 at 5.) Additionally, he claims he "was not advised of his *Miranda* rights and was basically coerced into waiving them." *Id.*

However, any claim that Gilder was not informed of his *Miranda* rights is incorrect. The record clearly reflects law enforcement officials properly advised Gilder of his rights and he voluntarily chose to waive them. (See

15

Exhibit A.)[2] The Advisement of Rights Gilder signed specifically stated he had a right to consult an attorney before being questioned and to have an attorney present during questioning. (*Id.*) *Miranda* rights are not required to be given using particular words, as long as the rights are reasonably conveyed. *United States v. Wysinger*, 683 F.3d 784, 798 (7th Cir. 2012). There is no question the right to have an attorney present during question was clearly communicated to Gilder. (*Id.*) Thus, his attorney cannot have been ineffective for failing to raise this meritless, factually inaccurate, claim.

Gilder next asserts his Sixth Amendment rights were violated during his questioning because he was "coerced" into waiving his rights. (Dkt. 1 at 15.) When determining if police coerced a *Miranda* waiver, courts look to "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). Nothing about this interrogation suggests coercion: it included no physical punishment; it was brief and collegial; Gilder gave no indication he was mentally impaired or under the influence of drugs or

---

2 The United States has attached Gilder's signed Advisement of Rights as Exhibit A.  The government is in possession of the video of Gilder's police interview and it is available for review, if needed by the Court.

alcohol; and he was advised of his constitutional rights. Gilder's only assertion of coercion is that officers forced him to waive his rights by intimidating him and telling him cooperating was in his best interests. (Dkt. 1, pg. 15.) This Court has specifically found intimidation is not a factor indicating coercion. *United States v. Snodgrass*, 635 F.3d 324 (7th Cir. 2011). Furthermore, police officers are allowed to "play on a suspect's fears and anxieties" as long as they do not magnify such fears to a point where the defendant cannot make a rational decision. *United States v. Sablotony*, 21F.3d 747, 752 (7th Cir. 1994).

Gilder makes no claim that his fear made him unable to rationally think, or that the officers themselves magnified that fear. Similarly, Gilder asserts he was induced to waive his rights by officers who suggested cooperating was in his best interests. (Dkt. 1, pg. 5). However, officers are free to solicit confessions or statements through promises of leniency. *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990). Ultimately, nothing in the record suggests Gilder was improperly coerced into waiving his rights. Thus, as with his first claim here, Gilder's attorney cannot have been ineffective for failing to raise this meritless claim.

Finally, Gilder argues his waiver of rights was invalid due to a misreading of his rights. Specifically, Gilder asserts the police officers improperly read him his rights in a way that suggested he could either have

17

an attorney present before his interrogation or during, but not both. (Dkt. 1, pg. 15.) The Supreme Court has held *Miranda* warnings do not necessitate a precise formulation. *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989). Rather, the words must simply convey four warnings: the right to remain silent, that anything said can be used against him in court, right to the presence of an attorney, and if he cannot afford an attorney one will be appointed for him. *Id.* A misreading of *Miranda* rights can invalidate a waiver if the words did not reasonably convey to a defendant these rights. *Wysinger*, 683 F.3d at 798.

However, that is not the case here. Before questioning, law enforcement offices clearly conveyed to Gilder his rights, including the right to have an attorney present before and during questioning, and even gave him a paper copy of those listed rights which he signed. (*See* Exhibit A.) This Advisement of Rights form clearly states all four warnings as required by *Miranda*, and in no way misstates the time frame of when a lawyer's presence can be requested. (*Id.*) Gilder knew and understood his rights and nonetheless chose to waive them. His attorney was not ineffective for failing to raise this incorrect argument.

Counsel is only required to investigate potentially *fruitful* defenses. *See Santiago*, 93 F. App'x at 78 (emphasis added). As none of the Sixth or Fifth Amendment claims had merit, counsel's failure to investigate was not

deficient performance. Therefore, Gilder has failed to prove ineffective assistance of counsel, and the claim should be dismissed.

### C. In light of the meritless defense and highly beneficial plea deal, Gilder has failed to show prejudice

Where the alleged error of counsel is failure to investigate, "the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change h[er] recommendation as to the plea." *Hill*, 474 U.S. at 58. This largely depends on whether the evidence would have likely changed the outcome of a trial. *Id.*

The record reflects there was no reasonable probability of going to trial, even if the confessions to police were suppressed. As explained above, even without Gilder's confession, the prosecution maintained a strong case against him. Furthermore, the plea deal, which required Gilder to plead guilty to only four out of twenty-two counts, highly benefitted him.

It is unlikely the suppression of the confession would have changed counsel's plea recommendation, due to the strength of the government's case. The Seventh Circuit has declined to find prejudice, even where counsel erred in failing to suppress evidence, where there is remaining evidence of substantial quality and quantity against the defendant. *See Welch v. Hepp*, 793 F.3d 734, 738 (7th Cir. 2015) (holding no prejudice despite counsel's error

when jury likely would have convicted based on remaining evidence, including eyewitness testimony, defendant's flight from police, co-defendant's testimony, and DNA evidence). The Supreme Court has held there are many reasons a defendant may choose a plea deal even if their confessions are suppressed, particularly if the prosecution's case remains strong. *See Premo*, 562 U.S. at 130.

Per the prejudice standard articulated in *Hill*, the likelihood of Gilder refusing such a beneficial plea deal and going to trial against a strong prosecution has not been shown with reasonable probability.

Gilder has not carried his burden to show ineffective assistance of counsel.

## V.    Remaining Constitutional Claims

Gilder next asserts two more claims: (1) that 28 U.S.C. § 924(c) is unconstitutionally vague; and (2) that his Sixth Amendment right to a jury trial was violated. However, both of these freestanding claims were foreclosed by his appellate waiver and meritless.

### A. Gilder's appellate waiver forecloses claims of unconstitutional vagueness and Sixth Amendment violation

Per his plea agreement, Gilder entered into a valid and enforceable appellate waiver. (Dkt. 43.) In exchange for the government's dismissal of Counts 1 through 8, 10, 12 through 19, and 21, Gilder waived his right to

appeal, contest, or modify his sentence, including bringing a motion under § 2255. *Id.*

Such waivers of collateral review in plea agreements are generally enforceable. *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). A waiver of collateral relief will be enforced so long as (1) it was made knowingly and voluntarily, (2) no constitutionally impermissible factors were considered at sentencing, (3) the term of imprisonment imposed did not exceed the statutory maximum, and (4) the petitioner does not claim ineffective assistance of counsel in connection with the negotiation of the plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).

Gilder's claims regarding unconstitutional vagueness and an *Apprendi* violation fall under none of these exceptions. And, unlike his arguments above, he does not couch these under an ineffective assistance of counsel.

Thus, these issues are within the scope of the broad collateral attack waiver that prohibits him from collaterally attacking his conviction and sentence on any ground. This Court should enforce the waiver to which Gilder agreed and summarily deny these arguments as waived.

### B. Even if these claims had not been waived, both are procedurally defaulted.

Furthermore, both the unconstitutional vagueness and *Apprendi* claim could have been raised on direct appeal, but were not. As such, they are

procedurally defaulted. "Claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal." *Sandoval*, 574 F.3d at 850.

### C. In addition to being waived and procedurally defaulted, both claims are meritless

While these claims are waived and procedurally defaulted, the government will briefly address the merits of each.

Supreme Court precedent forecloses Gilder's first claim. He first claims 28 U.S.C. § 924(c) is unconstitutionally vague because it "does not clarify that the 25 year mandatory minimum sentence for a second or subsequent offense of possessing firearms in the course of a crime of violence only applies when the prior § 924(c) conviction is already final prior to the commission of a new § 924(c) offense." (Dkt. 14.) But, in *Deal v. United States*, the Supreme Court disagreed with this exact argument. 508 U.S. 132-34 (1993). In *Deal*, the Court held that § 924(c) unambiguously referred to the finding of guilt that precedes the entry of final judgment and expressly rejecting the dissent's argument that the enhanced sentence can be applied only once the prior sentence is final. *Id.* Therefore, Gilder's claim of unconstitutional vagueness should be dismissed.

Gilder's next argument ignores that he pleaded guilty. He claims that his sentence violates his Sixth Amendment right to a jury trial because his

sentence was enhanced "based on a sentencing judge's finding that he discharged a firearm." (Dkt. 14.) Gilder claims "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Id.* To be sure, in *Apprendi v. New Jersey*, the Supreme Court stated the Due Process Clause entitles defendants to a decision by the trier of fact using the reasonable doubt standard on any fact that increases the statutory maximum penalty. 530 U.S. 466, 490 (2000).

But Gilbert pleaded guilty. "[B]y pleading guilty, he waived any right to a jury trial and may not contend on appeal that any particular issue should have been submitted." *United States v. Parker*, 245 F.3d 974, 977 (7th Cir. 2001). And that is true as to his particular claim as well. *See United States v. Henderson*, 16 F. App'x 487, 490 (7th Cir. 2001) (holding no *Apprendi* violation when government charged amount of drugs in the indictment and the defendant later pled guilty). Therefore, Gilder's Sixth Amendment violation claim has no merit because there was no *Apprendi* violation.

As these two claims are waived, procedurally defaulted, and without merit, this Court should deny these claims.

## VI.    First Step Act

### A. The First Step Act claim is inapplicable to this case

Lastly, Gilder claims the First Step Act applies to his sentence and, therefore, it should be reduced. (Dkt. 14). Section 403 of the Fair Step Act, which covers § 924(c) offenses, makes clear the amendments to sentencing made by the Fair Step Act apply to offenses committed before the Act was enacted only if "the sentence for the offense has not been imposed as of such date of enactment." Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5222 (2018). Gilder's sentencing occurred on July 10, 2017, far before the Fair Step Act's enactment date of December 21, 2018. (Dkt. 55). Therefore, the law is not applicable to his case.

## CONCLUSION

The United States respectfully urges the Court to deny Gilder's U.S.C. § 2255 motion with prejudice.

<div style="margin-left: 40%">

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:    s:/Jeffrey D. Preston
Jeffrey D. Preston
Assistant United States Attorney

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 28, 2019, a copy of the foregoing was filed

electronically and that a copy was mailed the following day by first class U.S.

Mail, postage prepaid and properly addressed to the following:

Donnell Gilder, Jr.
Reg. No. 15188-028
Beckley-FCI
Inmate Mail/Parcels
P.O. Box 350
Beaver, WV 25813

<div style="margin-left: 40%;">

s:/Jeffrey D. Preston
Jeffrey D. Preston
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-6125
E-mail: Jeffrey.Preston@usdoj.gov

</div>